IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELISSA MARTINEZ,

    Plaintiff,

vs.                                          No. 1:20-CV-00991-WJ-KRS

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,[1]

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-83f. On December 4, 2020, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. (*See* Doc. 16) (Order of Reference). Having considered Plaintiff's Motion to Reverse and Remand (Doc. 30), filed August 5, 2021; the Commissioner's response in opposition (Doc. 33), filed November 8, 2021; and Plaintiff's reply (Doc 34), filed November 18, 2021, the undersigned RECOMMENDS that the Court GRANT Plaintiff's motion for the reasons set forth below.

### I. PROCEDURAL BACKGROUND

On September 25, 2015, Plaintiff filed an initial application for disability insurance benefits and protectively filed an initial application for supplemental security income. (*See* Administrative Record ("AR") at 47-48). Plaintiff alleged that she had become disabled on July 7, 2013, due to neurofibromatosis, chronic pain, anxiety, insomnia, and arthritis of the right knee.

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

(*Id.* at 49, 62). Her application was denied at the initial level on March 2, 2016 (*id.* at 47-48), and at the reconsideration level on July 5, 2016 (*id.* at 117-18). Plaintiff requested a hearing (*id.* at 157-58), which ALJ Ben Ballengee conducted on May 24, 2019 (see *id.* at 11-45). Plaintiff appeared pro se and testified at the hearing (*id.* at 21-36, 43-45), as did a vocational expert (*id.* at 37-43).

On August 20, 2019, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 122-31). On July 23, 2020, the Appeals Council denied Plaintiff's request for review (*id.* at 136-38), which made the ALJ's decision the final decision of the Commissioner. On September 28, 2020, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).[2]

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

---

[2] Congress has imposed a statute of limitations requiring that actions for judicial review of the Commissioner's final decisions be filed within sixty days of receipt of notice of said decision. 42 U.S.C. § 405(g); *see also Bowen v. City of New York*, 476 U.S. 467, 476, 480 (1986) (citations omitted) (recognizing that sixty-day requirement "is not jurisdictional, but rather is a statute of limitations waivable by the parties" and may be subject to equitable tolling). Absent contrary evidence, the Commissioner presumes that notice is received "5 days after the date on the notice." 20 C.F.R. § 416.1401; (*see also* AR at 137). By operation of § 416.1401 and FED. R. CIV. P. 6(a)(1)(C), Plaintiff's petition for judicial review in this action was due on Monday, September 28, 2020, and is therefore timely.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20

3

C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 123-24). First, the ALJ found that Plaintiff last met the insured status requirement on June 30, 2018, and had not engaged in substantial gainful activity since the alleged onset date of July 7, 2013. (*Id.* at 124). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: neurofibromatosis, Type I; right knee meniscal tear; anxiety; and depression. (*See id.*). The ALJ also found evidence of a nonsevere impairment, specifically a heightened risk for cervical human papillomavirus, as well as evidence of a non-medically determinable impairment of insomnia. (*See id.* at 125).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the

4

SSA's regulations. (*See id.* at 125-26). In so holding, the ALJ found that Plaintiff possessed only moderate limitations in the four broad areas of mental functioning, meaning that she did not satisfy the "paragraph B" criteria of sections 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) of Appendix 1, and that the record also did not establish that the "paragraph C" criteria of those listings had been satisfied. (*See id.*).

Proceeding to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and examining providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 126-29). Having done so, the ALJ concluded that Plaintiff possessed an RFC to perform light work with certain exertional and nonexertional modifications. (*See id.* at 126). Based on this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. (*See id.* at 129).

Moving to step five, the ALJ determined that Plaintiff was able to perform other jobs existing in significant numbers in the national economy. (*See id.* at 129-30). The ALJ therefore concluded that Plaintiff's work was not precluded by her RFC and that she was not disabled. (*See id.* at 130).

## IV. DISCUSSION

The crux of Plaintiff's argument is that the ALJ failed to properly evaluate her chronic pain disorder when assessing her RFC and her subjective symptom evidence at step four of the sequential evaluation process. (*See, e.g.*, Doc. 30 at 1). The Commissioner responds, in essence, that the ALJ adequately evaluated Plaintiff's chronic pain disorder when he discussed her neurofibromatosis diagnosis and associated symptoms. (*See* Doc. 33 at 5-11). For the reasons set forth below, the undersigned concludes that the ALJ erred in his evaluation of Plaintiff's subjective allegations of pain at step four and that remand is proper.

5

A three-step analysis governs an ALJ's assessment of a claimant's allegations of a pain-producing impairment when evaluating her subjective symptom evidence and developing her RFC. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Under this analysis,

> an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged . . . ; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64).

Persuasive decisions have recognized that the *Luna* framework "is equivalent to the two-step process prescribed by the SSA for evaluating a claimant's statements about her pain and other symptoms." *See, e.g.*, *Chavira v. Kijakazi*, No. 20-cv-00563 GBW, 2022 WL 92781, at *3 (D.N.M. Jan. 10, 2022); *see also, e.g.*, *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (unpublished) (noting that *Luna* analysis is consistent with SSA interpretation of agency regulations).[3] The first step of the agency process, which combines the first and second steps of the *Luna* analysis, requires the ALJ to ask "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms, such as pain," *see* Social Security Ruling (SSR) 16-3P, 2016 WL 1119029, at *7 (Mar. 16, 2016).[4] The second step, an evaluation of "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability

---

[3] The undersigned cites *Brownrigg*, *Chavira*, and other non-binding authorities for their persuasive value unless context indicates otherwise.

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; see also *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

to perform work-related activities," *see id.* at *2, effectively mirrors the final step of the *Luna* analysis. *See, e.g.*, *Chavira*, 022 WL 92781, at *3.

Under either the *Luna* framework or the agency process at SSR 16-3P, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence,'" *see Keyes-Zachary*, 695 F.3d at 1167 (citation omitted), or address factors for which "there is no information in the evidence of record," *see* SSR 16-3P, 2016 WL 1119029, at *7. After all, "common sense, not technical perfection, is our guide." *Keyes-Zachary*, 695 F.3d at 1167. Conversely, though, the ALJ may not "simply 'recite the factors that are described in the regulations'" or provide "a conclusion in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (internal citations omitted). Rather, the ALJ must provide "specific reasons" for his conclusions that are "closely and affirmatively linked to substantial evidence," *id.* (quotation omitted), and his reasoning must be "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms," *see* SSR 16-3P, 2016 WL 1119029, at *9. So long as these standards are met, an ALJ's evaluations of the claimant's subjective symptoms, including pain, "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[5]

### A. Underlying Medical Impairment

Plaintiff first argues that the ALJ's analysis fails at the first step of the SSR 16-3P analysis (*i.e.*, the first and second steps of the *Luna* framework), which seeks to establish whether a medically determinable impairment exists that may reasonably be expected to produce the pain she alleges. Plaintiff points out that she has claimed both neurofibromatosis and chronic

---

[5] In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (superseding SSR 96-7p). Older authorities that addressed a claimant's "credibility," *see, e.g.*, *White*, 287 F.3d at 910, are therefore construed as referring to an individual's subjective symptom evidence.

pain syndrome[6] as disabling impairments from the beginning of the application process. (*See* Doc. 30 at 4) (citing AR at 268) (disability report); (*see also* AR at 49) (list of allegedly disabling impairments claimed by Plaintiff upon initial application, including neurofibromatosis and chronic pain). She further states that the record is replete with evidence that she suffers from chronic pain syndrome as a pain-producing impairment. (*See, e.g.*, Doc. 30 at 4-12) (citations to record omitted) (noting providers' repeated diagnoses of chronic pain). While Plaintiff concedes that many of the medical records discussing her chronic pain also address her neurofibromatosis diagnosis (*see, e.g., id.* at 5) (citing AR at 353), she accurately highlights that the two conditions are consistently listed as separate diagnoses (*see, e.g.*, AR at 353) (noting provider's diagnosis of neurofibromatosis but *suspicion* of chronic pain diagnosis upon establishment of care); (*id.* at 341-42) (separately assessing both neurofibromatosis and chronic pain in later record from same provider); (*see also id.* at 433-34, 439-40) (different provider's initial diagnosis of neurofibromatosis and subsequent diagnoses of both neurofibromatosis *and* chronic pain). Stressing that a consultative psychological examiner ("CE") diagnosed her with "Pain Disorder, associated with a general medical condition *and psychological factors*" (Doc. 30 at 11-12) (quoting AR at 492) (emphasis added), Plaintiff further contends that the record establishes that her chronic pain amounts to a somatoform condition that "produces pain independently of her neurofibromatosis" (*see* Doc. 34 at 3) (citation omitted).

     Despite the foregoing record, Plaintiff argues, the ALJ "complete[ly] fail[ed] to discuss" her chronic pain syndrome when evaluating her RFC and subjective symptom evidence. (*See* Doc. 30 at 16). As a technical matter, Plaintiff's assertion is correct: other than a brief reference

---

[6] The parties sometimes characterize Plaintiff's pain condition as a "pain disorder." For present purposes, the undersigned construes discussions in the record of "chronic pain," "chronic pain syndrome," "chronic pain disorder," and "pain disorder" as referring to the same condition, whether or not that condition is distinct from her neurofibromatosis.

to the phrase when reviewing the CE's report, the ALJ's decision included no discussion of "chronic pain" as a distinct pain-producing impairment. Plaintiff contends that this omission amounted to a failure to discuss significantly probative evidence and a failure to resolve ambiguities in the record. (*See id.*).

The Commissioner responds that the record evidence establishes such an "intrinsic connection between Plaintiff's neurofibromatosis and chronic pain" that the two conditions are effectively the same impairment. (*See* Doc. 33 at 6-11). There is no dispute that the ALJ expressly considered subjective symptom evidence concerning Plaintiff's neurofibromatosis impairment. (*See* AR at 127). And as the Commissioner correctly points out, the medical evidence repeatedly refers to significant links between Plaintiff's chronic pain diagnosis and her neurofibromatosis, such that the former is sometimes referred to as merely secondary to the latter (*see, e.g.*, *id.* at 427) ("Pt w/ chronic pain 2/t neurofibromatosis") and medication for one is often discussed as relieving pain from the other (*see, e.g.*, *id.* at 347) (following up on "titration of her chronic pain medication *for her neurofibromatosis*) (emphasis added). The Commissioner also points to the CE's characterization of Plaintiff's pain disorder, which he describes as "severe and chronic pain *associated with neurofibromatosis*" (*see id.* at 493). Therefore, the Commissioner argues, the ALJ did not err because his decision "considered the exact disorder that *caused* Plaintiff's chronic pain: neurofibromatosis." (Doc. 33 at 5).

On the question of whether Plaintiff's neurofibromatosis and chronic pain syndrome diagnoses are distinct pain-producing impairments, the undersigned concludes that both parties' positions find support in the record. While some records and medical opinions suggest that Plaintiff's chronic pain may be at least somewhat distinguishable from her neurofibromatosis (*see, e.g.*, AR at 492) (noting "psychological factors" associated with pain disorder); (*id.* at 353)

9

(noting provider's initial diagnosis of neurofibromatosis and conditional belief that chronic pain was also present), other records indicate that her providers treated these diagnoses as addressing a single condition (*see, e.g.*, *id.* at 435) (finding chronic pain secondary to neurofibromatosis). In short, the medical record is ambiguous as to whether Plaintiff's chronic pain was a pain-producing impairment distinct and apart from her neurofibromatosis impairment. The responsibility for resolving that ambiguity as it relates to Plaintiff's RFC lies not with the Court, but with the ALJ. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that when assessing a claimant's RFC, an ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

The problem here is that the ALJ did not resolve that ambiguity. Although Plaintiff's chronic pain diagnosis is addressed repeatedly throughout the medical record, the ALJ's decision included no explicit mention of that condition at any stage of the sequential evaluation process,[7] aside from a passing reference to "chronic pain and associated physical limitations" diagnosed by the CE (*see* AR at 128)—who, as noted, seemed to attribute Plaintiff's chronic pain at least in part to conditions other than neurofibromatosis (*see id.* at 492) (noting "psychological factors"). In discussing the intensity, persistence, and limiting effects of Plaintiff's neurofibromatosis, the ALJ cited only to medical records discussing that specific condition, none of which include any reference to a chronic pain disorder. (*See id.* at 127) (citing "1F/3-4" and "1F/6," corresponding

---

[7] Although Plaintiff argues that her alleged pain disorder is a distinct impairment from her neurofibromatosis, she stresses that she is not alleging reversible error at step two of the sequential evaluation process. (*See* Doc. 34 at 3-4). This approach is proper; any error at step two is harmless where, as here, the ALJ concludes that a claimant cannot be denied benefits at that step. *See, e.g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008). The undersigned therefore does not address the Commissioner's harmless-error argument as it relates to step two. (*See* Doc. 33 at 10). Nevertheless, because remand is proper in this case, the undersigned would recommend that the ALJ clarify at step two whether he considers Plaintiff's chronic pain syndrome diagnosis to be the same condition as her neurofibromatosis condition and, if not, whether the former is a severe impairment, a non-severe impairment, or a non-medically determinable impairment.

to AR 334-35, 337).[8] In other words, the ALJ neither explicitly nor implicitly signaled his understanding that Plaintiff's chronic pain diagnosis was functionally inseparable from her neurofibromatosis diagnosis. If he intended to treat Plaintiff's neurofibromatosis and her chronic pain as one and the same pain-producing impairment, he did not "clearly articulate[]" his intention to do so as was required of him. *Cf.* SSR 16-3P, 2016 WL 1119029, at \*9.

On this record, the undersigned cannot say that the ALJ properly evaluated Plaintiff's chronic pain condition as one "that could reasonably be expected to produce" the associated pain that she alleges as required under SSA policy. *See id.* at \*7. Nor can the undersigned say with confidence that the ALJ properly considered whether objective evidence supported Plaintiff's claim that her chronic pain constituted a pain-producing impairment that could reasonably be expected to produce the sort of pain she alleges, as the Tenth Circuit requires. *See Keyes-Zachary*, 695 F.3d at 1166-67. Accordingly, the undersigned cannot find that the ALJ properly discussed or considered all uncontroverted or otherwise probative evidence pertaining to Plaintiff's allegations of disability. *See, e.g.*, *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (discussing ALJ's obligation to discuss "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"); *see also, e.g.*, *Scates v. Astrue*, No. 11-cv-00589 CG, 2012 WL 13080131, at \*5-6 (D.N.M. June 20, 2012) (directing remand where

---

[8] The records in question, which date to 2012 and 2013, do refer at times to pain localized in Plaintiff's back and lower extremity. (*See* AR at 334-35, 337). However, Plaintiff has testified that she is not sure whether her back pain, which radiates to her foot and which she attributes to sciatica, is related to the "sharp pains" that occur throughout her body. (*See id.* at 27-28). Similarly, Plaintiff's providers have treated her back pain as a distinct issue from her neurofibromatosis and chronic pain. (*See, e.g.*, *id.* at 341) (listing separate diagnoses of low back pain, chronic pain syndrome, and neurofibromatosis). The ALJ himself also discussed Plaintiff's complaints of neurofibromatosis, back pain, and foot pain as discrete matters. (*See* AR at 127). For this reason, the undersigned does not interpret the ALJ's evaluation of Plaintiff's back and lower extremity pain as addressing the pain associated with her neurofibromatosis and/or chronic pain.

11

ALJ "failed to consider a diagnosis of somatoform disorder [and pain disorder] or to substantially support the decision to reject such a diagnosis").[9]

The Commissioner suggests that any error in the ALJ's failure to address Plaintiff's chronic pain condition as a pain-producing impairment was harmless because the ALJ developed RFC restrictions that were appropriate in light of the intensity and persistence of her neurofibromatosis-related pain. (*See* Doc. 33 at 8-10). This argument is unavailing because, as explained elsewhere in these findings, the ALJ also erred in his assessment of the intensity and persistence of Plaintiff's pain at the final step of the SSR 16-3P analysis. More to the point, the Commissioner's argument misconstrues the nature of the error that Plaintiff alleges here: the problem at this stage of the analysis is that the ALJ's decision did not "clearly articulate[]" that he properly considered Plaintiff's chronic pain syndrome and the symptoms associated with *that* condition. *Cf.* SSR 16-3P, 2016 WL 1119029, at *9. Although the Commissioner argues that a broad interpretation of the ALJ's summary of Plaintiff's testimony concerning neurofibromatosis and "her *related pains*" leads to a contrary conclusion (*see* Doc. 33 at 9) (quoting AR at 127) (emphasis in Commissioner's brief), the testimony in question makes clear that Plaintiff was speaking about symptoms pertaining specifically to her neurofibromatosis (*see* AR at 26-27) (describing "sharp stabbing pain" in response to questions about neurofibromatosis symptoms); (*id.* at 34) (testifying again to pains associated with neurofibromatosis). To the extent that the ALJ's summary of this testimony may have been intended to signal that he considered *all* of Plaintiff's pain-producing impairments, further articulation of this point is needed to allow for meaningful review of his decision.

---

[9] The undersigned's citation to *Scates* should not be read to signal that Plaintiff's chronic pain must be construed as a somatoform disorder. While the record contains evidence that might be interpreted as supporting that conclusion, such a determination must be made—if it is to be made at all—by the ALJ in the first instance.

For the foregoing reasons, the undersigned concludes that the ALJ did not determine whether Plaintiff's chronic pain amounts to an underlying medically determinable impairment that could reasonably be expected to produce the type of pain alleged—or, at the very least, did not clearly articulate such a determination—in accordance with controlling legal standards. The undersigned therefore recommends that this matter be remanded so that the ALJ may properly evaluate this issue. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted) ("Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

### B. Intensity and Persistence of Pain

Plaintiff also points to issues relevant to the intensity and persistence of the pain associated with her pain-producing impairments, particularly her efforts to treat these symptoms and the alleged impact of her psychological condition on her pain. (*See, e.g.*, Doc. 30 at 14-15) (arguing that ALJ did not address treatments for pain disorder with psychological factors). Having considered these issues, the undersigned concludes that even if the ALJ had reasonably evaluated Plaintiff's alleged chronic pain disorder at the earlier steps of the *Luna* and SSR 16-3P analyses, remand would still be required due to his failure to apply proper legal standards at the final step of those analyses. Put another way, even if the Commissioner is correct that the ALJ effectively evaluated Plaintiff's neurofibromatosis and chronic pain conditions as one and the same impairment, and even if the ALJ's evaluation of the former obviated any need to independently evaluate the latter as a separate pain-producing condition, remand is nonetheless warranted due to the ALJ's failure to assess the intensity and persistence of Plaintiff's pain in accordance with the *Luna* framework and the SSA's own interpretation of its regulations.

An ALJ must consider a "non-exhaustive list of factors to assess a claimant's statements about the disabling effect of pain and symptoms," including:

> (i) the claimant's activities of daily living ("ADLs"); (ii) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (iii) precipitating and aggravating factors, including psychological disorders; (iv) the persistency of the claimant's attempts to find relief for these symptoms; (v) the regularity of the claimant's contact with medical professionals; (vi) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her symptoms; (vii) treatment, other than medication, that the claimant receives or has received for her symptoms; (viii) the claimant's willingness to try prescribed treatment; and (ix) any measures that the claimant uses or has used to relieve her pain or other symptoms (e.g., use of crutches or cane, lying flat on her back, sleeping on a board, etc.).

*Chavira*, 2022 WL 92781, at *3 (citing *Keyes-Zachary*, 695 F.3d at 1167; 20 C.F.R. § 404.1529(c)(3); and SSR 16-3P, 2016 WL 1119029, at *7). Once again, while a "formalistic factor-by-factor recitation" is not required, *see Keyes-Zachary*, 695 F.3d at 1167, an ALJ must discuss "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects" when considering these factors. *See Clifton*, 79 F.3d at 1010.

Assuming *arguendo* that the ALJ's discussion of Plaintiff's neurofibromatosis implicitly encompassed a discussion of her chronic pain syndrome, his decision adequately addressed the location, duration, frequency, and intensity of Plaintiff's pain associated with that condition. (*See* AR at 127) ("[Plaintiff] testified that her neurofibromatosis causes her sharp stabbing pains throughout her body. She stated that most of her related pains last very short periods of time, but they happen throughout the day."); (*see also id.*) ("The record reflects that [Plaintiff's] neurofibromatosis causes growths and lesions throughout her body, and she experiences episodic flare-ups that cause her pain."). However, the ALJ erred by failing to sufficiently discuss other SSR 16-3P or *Luna* factors for which there is record evidence that may support a finding of disability.

14

With respect to ADLs, uncontroverted statements from Plaintiff and a function report from her mother provide that her alleged pain interferes with her ability to sleep (*see id.* at 34) (hearing testimony); (*id.* at 275) (third-party function report); (*id.* at 491) (CE's report), her ability to perform domestic chores (*see id.* at 276-77, 491), and her ability to drive for long distances (*id.* at 491). To the extent that the ALJ discussed Plaintiff's ADL limitations at all, he did not address the alleged impact of her chronic pain on those activities. (*Cf. id.* at 128) (noting Plaintiff's description of chores and driving practices to CE, without discussing effect of pain on those matters). Nor does the ALJ's report otherwise suggest that the objective record controverts Plaintiff's allegations regarding the impact of pain associated with her neurofibromatosis on her ADLs. (*Cf. id.* at 127) (acknowledging Plaintiff's neurofibromatosis and associated pain "throughout her body" but suggesting only that MRI did not support findings as to back pain).

Other relevant factors go entirely unaddressed by the ALJ. Although the CE appeared to conclude that "psychological factors" play a role in Plaintiff's pain disorder (*see id.* at 492), the ALJ did not discuss his findings as to the potential impact of Plaintiff's psychological disorders on the intensity and persistence of her pain (*cf. id.* at 128) (evaluating CE's opinions).[10] Nor did the ALJ discuss Plaintiff's years-long efforts to obtain medication that would adequately control the pain allegedly associated with her neurofibromatosis, the regularity of her contact with providers to address this issue, or the types, dosages, effectiveness, or side effects of the pain medications prescribed to treat her neurofibromatosis or chronic pain conditions. (*See generally, e.g.*, *id.* at 333-37, 341-55, 361-440). An ALJ must consider all of these factors when assessing a Plaintiff's subjective allegations of pain, *see, e.g.*, *Chavira*, 2022 WL 92781, at *3 (summarizing

---

[10] Though the ALJ accorded only "significant weight, but not great weight" to the CE's opinions, he did not reject the CE's report, nor did he specifically reject the CE's finding as to the relationship of "psychological factors" to Plaintiff's pain disorder. (*See* AR at 128). Indeed, the Commissioner approvingly cites the CE's findings on this point and does not argue that the ALJ rejected them. (*See* Doc. 33 at 8) (citing AR at 492).

15

Tenth Circuit and SSA requirements for discussing pain and other subjective symptom evidence), and each one would appear on its face to provide some support for Plaintiff's claims concerning the intensity and persistence of pain associated with her neurofibromatosis and/or chronic pain syndrome. Consequently, the ALJ's failure to address these probative issues when evaluating the intensity and persistence of symptoms associated with her pain-producing impairment amounted to a failure to follow controlling legal standards. *See, e.g., Clifton*, 79 F.3d at 1010; *see also, e.g., Hardman*, 362 F.3d at 680 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996)) (finding reversible error where ALJ "fail[ed] to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints").

The ALJ did not follow controlling legal standards when evaluating the intensity and persistence of Plaintiff's pain associated with her neurofibromatosis and/or chronic pain syndrome impairments. For this reason, the undersigned recommends that the Court remand this matter so that the ALJ may properly evaluated Plaintiff's subjective allegations of pain in accordance with SSR 16-3P and binding Tenth Circuit precedent.

## V.  CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court **GRANT** Plaintiff's Motion to Reverse and Remand (Doc. 30) and **REMAND** this matter to the Commissioner, with a directive that the Commissioner evaluate Plaintiff's allegations of pain in accordance with controlling legal standards as provided herein.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an**

**order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**